Todd E. Zenger (5238)
DUREN IP
610 E. South Temple Street, Suite 300
Salt Lake City, Utah 84102
Phone: (801) 869-8538
Email: tzenger@durenip.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| ME2 PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> DOES 1-23, <br><br> Defendants. | Civil Action No. 2:17-cv-00178-DN <br><br> Judge David Nuffer <br><br> RESPONSE TO ORDER TO SHOW CAUSE: <br><br> BRIEF 2 RE CONTRIBUTORY INFRINGEMENT STANDARD |

Plaintiff ME2 Productions, Inc. submits this response to the Order to Show Cause as to whether the proposed, excerpted analysis for contributory infringement of copyright in paragraph 2[1] of the Order to Show Cause should apply and how the Complaint in this case conforms with that standard.

### A. There is no one-size-fits-all analysis for contributory infringement of copyright

The Supreme Court of the United States and Circuit Courts of Appeals have articulated different[2] standards when analyzing contributory infringement of copyright. This reveals that

---

[1] Citing *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1147-48 (9th Cir. 2018) ("*Cobbler*").
[2] "… circuit courts approach contributory liability through varying lenses, …." *Cobbler*, 901 F.3d at 1148.

there is a spectrum of legal and factual analyses which are applied on a case-by-case basis and which may or may not lead to a determination of contributory infringement. There is not just one standard.[3]

The Supreme Court and other Circuit Courts of Appeal have rejected portions of the proposed 9th Circuit analysis in peer-to-peer and other analogous circumstances. Therefore, the excerpted analysis for contributory infringement of copyright in paragraph 2 of the Order to Show Cause should not be adopted as the only basis upon which contributory infringement may be found.

### B. The Supreme Court has rejected the Ninth's Circuit's 'not capable' standard

The Supreme court has not adopted a "not capable" standard as a bright line for contributory infringement in peer-to-peer cases. Indeed, contributory infringement has been found by the Supreme Court when capable noninfringing uses did exist.[4] Other Circuit Courts have also concluded that contributory infringement was present when capable noninfringing uses did exist.[5]

Adopting the "not capable" standard would result in a standard that if a noninfringing use was shown to exist then the "not capable" test would not be met and may preclude a determination of contributory infringement when the Supreme Court and other Circuits have held to the contrary.

---

[3] For example, the Ninth Circuit Court of Appeals "has identified two strands of liability …." *Id.* The panel decision in *Cobbler* does not hold that these two strands are the exclusive strands of analysis for contributory infringement.

[4] *E.g., Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, 545 U.S. 913 (2005) (citing *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984)).

[5] *E.g., In re Aimster Copyright Litigation,* 334 F.3d 643, 651-53 (7th Cir. 2003) (noninfringing uses can be present with contributory infringement); *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159 (2d Cir. 1971).

The Supreme Court appears to have already rejected the proposed Ninth Circuit standard for the same reason. In *Grokster,* the district court and Ninth Circuit found in favor of the accused defendants excusing them from liability for contributory infringement. The Supreme Court vacated the Ninth Circuit decision stating:

> We agree with [Plaintiff/Petitioner] that the [Ninth Circuit] Court of Appeals misapplied *Sony*, which it read as limiting secondary liability quite beyond the circumstances to which the case applied. *Sony* barred secondary liability based on presuming or imputing intent to cause infringement solely from the design or distribution of a product capable of substantial lawful use, which the distributor knows is in fact used for infringement. The Ninth Circuit has read *Sony's* limitation to mean that whenever a product is capable of substantial lawful use, the producer can never be held contributorily liable for third parties' infringing use of it; it read the rule as being this broad, even when an actual purpose to cause infringing use is shown by evidence independent of design and distribution of the product, unless the distributors had 'specific knowledge of infringement at a time at which they contributed to the infringement, and failed to act upon that information.' 380 F.3d at 1162 (internal quotations marks and alteration omitted). Because the Circuit found the [Defendants'/Respondents'] software capable of substantial lawful use, it concluded on the basis of its reading of *Sony* that neither company could be held liable, since there was no showing that their software, being without any central server, afforded them knowledge of specific unlawful uses.
>
> This view of *Sony,* however, was error, …. the Ninth Circuit's judgment rested on an erroneous understanding of *Sony* ....[6]

A "not capable" standard is merely a point on the spectrum, one consideration; it is not a dividing line between liability and no liability for contributory infringement. The proposed "not capable" should not be adopted.

### C. A different panel of the Ninth Circuit has followed *Grokster*

In another case in the Ninth Circuit involving a bit-torrent defendant, the court acknowledged that an absolute "not capable" rule is incorrect. When analyzing the *Grokster*

---

[6] *Grokster*, 545 U.S. at 933-34.

defendants' argument for broad immunity under a Sony-capable-of-noninfringement standard, the court recognized that the Sony holding should be construed so broadly:

> The [*Grokster*]Supreme Court did not see *Sony* as providing such broad insulation from copyright liability. Rather, said the Court, *Sony*
>
>> limits imputing culpable intent as a matter of law from the characteristics or uses of a distributed product. But nothing in *Sony* requires courts to ignore evidence of intent if there is such evidence, and the case was never meant to foreclose rules of fault-based liability derived from the common law.
>
> *Grokster III*, 545 U.S. at 934-35, 125 S.Ct. 2764 (emphasis added). The "staple article of commerce doctrine" adopted in *Sony, Grokster III* explained, "absolves the equivocal conduct of selling an item with substantial lawful as well as unlawful uses, and limits liability to instances of more acute fault than the mere understanding that some of one's products will be misused." Id. at 932-33, 125 S.Ct. 2764 (emphasis added). "Thus, where evidence goes beyond a product's characteristics or the knowledge that it may be put to infringing uses, and shows statements or actions directed to promoting infringement, *Sony's* staple-article rule will not preclude liability." Id. at 935, 125 S.Ct. 2764.[7]

As relected in this Ninth Circuit analysis an absolute "not capable" standard is not correct. The Court found liability even though bittorrent has noninfringing uses.

### D.  The "with knowledge" requirement is also not necessarily required

As the quotation from *Grokster* above also indicates, specific knowledge of infringement is also not necessarily required.  The 2018 Ninth Circuit *Cobbler* opinion appears to have also misapplied *Sony* and *Grokster* (2005) when it relied upon the 1996 Ninth Circuit decision in *Fonovisa*[8] for its "with knowledge" requirement not found in *Sony or Grokster*.

Consistent with *Sony* and *Grokster,* other Circuit Courts have not required specific knowledge of infringement before finding contributory infringement.  In *Gershwin*, the Second

---

[7] *Columbia Pictures Industries, Inc. v. Gary Fung,* 710 F.3d 1020, 1032 (9th Cir. 2013).
[8] *Fonovisa v. Cherry Auction, Inc., 76 F.3d 259, 264 (9th Cir. 1996).*

Circuit found contributory infringement relying on a standard that did not require specific knowledge of the infringement to find a party liable, that is, "even though he has no actual knowledge that copyright monopoly is being impaired."[9]

The Seventh Circuit applies[10] a contributory infringement standard in peer-to-peer cases without requiring knowledge of the infringement:

> We also do not buy Aimster's argument that since the Supreme Court distinguished, in the long passage from the *Sony* opinion that we quoted earlier, between actual and potential noninfringing uses, all Aimster had to show in order to escape liability for contributory infringement is that it's file-sharing system *could* be used in noninfringing ways, which obviously it could be. Were that the law, the seller of the product or service used solely to facilitate copyright infringement, though it was capable in principle of noninfringing uses, would be immune from liability for contributory infringement. That would be an extreme result and one not envisaged by the *Sony* majority.[11]

The Seventh Circuit explained the correctness of this approach pointing out that lacking knowledge by avoiding knowing or willful blindness is sufficient and the equivalent of knowledge in copyright.[12] The Seventh Circuit also reasoned that the failure to take available affirmative steps to stop infringement, when reasonably available, combined with other evidence also supports a finding of contributory infringement.[13]

The Ninth Circuit has also found liability of a bittorrent defendant without requiring actual knowledge of infringement.[14]

Contrary to the standard set forth in paragraph 2 of the Order to Show Cause, knowledge of the infringement is not required for contributory infringement. While knowledge of

---

[9] *Gershwin*, 443 F.2d 1159, 1161 (citing *Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.2d 304 (1d Cir. 1963)).
[10] *In re Aimster Copyright Litigation,* 334 F.3d 643, 646-655 (7th Cir. 2003)
[11] *Id. at 651.*
[12] *Id.* at 650 ("Willful blindness is knowledge, in copyright").
[13] *Id. at 653.*
[14] *Columbia Pictures Industries, Inc. v. Gary Fung,* 710 F.3d 1020, 1032 (9th Cir. 2013).

infringement may be a consideration as to contributory infringement, it is not required. The "with knowledge" standard should not be adopted.

### E. The Allegations of the Complaint sufficiently allege contributory infringement under the *Cobbler* and other cases

Nonetheless and without acquiescing to the proposed standard, the allegations of the Complaint sufficiently conform to the proposed standard derived from *Cobbler* and other cases.

In the Complaint in this case, allegations of willful, intentional and knowing conduct actively encouraging or inducing infringement are pled.[15] These allegations address a combination of other, specific acts, including:

- this action brought to stop Defendants and others from copying and distributing to others infringing copies of the Copyrighted Motion Picture.

- defendants are infringing through use the BitTorrent file sharing protocol. Defendants' infringements allow them and others to unlawfully obtain and distribute copies of the Copyrighted Motion Picture.

- each time a Defendant unlawfully distributes an unauthorized copy of the Copyrighted Motion Picture to others over the Internet, each person who copies that motion picture can then further distribute that unlawful copy to others without any significant degradation in sound and picture quality.

- defendant's distribution of even a part of an unlawful copy of the Copyrighted Motion Picture can further the nearly instantaneous worldwide distribution of that single copy to an unlimited number of people.

- defendant's acts of distributing the Copyrighted Motion Picture support, maintain and further a for-profit exploitation by Defendants and others of the Copyrighted Motion Picture.

- rampant infringement of exclusive rights.

- each Defendant, without consent or permission of Plaintiff as exclusive rights owner, distributed and offered to distribute over the Internet infringing copies of Copyrighted Motion Picture for which Plaintiff has exclusive rights.

---

[15] *E.g.,* Complaint, ECF No. 2, ¶¶ 3, 4, 7, 12-21, 24, 26, 27 29-36, 41, 42, 44-48 and "1" (following ¶ 49).

- defendants have notice of Plaintiff's rights through Internet Service Provider ("ISP") notification, general publication and advertising and/or more specifically as identified in the content of the motion picture, advertising associated with the motion picture, and all packaging and copies, each of which bore a proper copyright notice.

- each Doe Defendant copied and/or distributed or allowed to be copied and/or distributed Plaintiff's Copyright Motion Picture.

- defendant is known by the Internet Protocol ("IP") address used by each Defendant.

- the date and at the time at which the infringing activity of each Defendant was observed.

- the IP address used by each Defendant has been traced to the District of Utah.

- activity of each IP address of Defendants has also been observed and associated with significant infringing activity and associated with the exchange of other titles on peer-to-peer networks.

- the volume, titles and persistent observed activity associated with each Defendant's IP address indicates that each Defendant is not a transitory or occasional guest but is either the primary subscriber of the IP address or someone who resides with the subscriber and/or is an authorized user of the IP address.

- the volume of the activity associated with each Defendant's IP address further indicates that anyone using or observing activity on the IP address would likely be aware of the conduct of Defendant.

- the volume and titles of the activity associated with each Defendant's IP address indicates that each Defendant is not a child, but an adult, often with mature distinct tastes.

- defendants are each a participant in a peer-to-peer ("P2P") network using the BitTorrent protocol. The BitTorrent protocol makes even small computers with low bandwidth capable of participating in large data exchanges across a P2P network.

- to begin an exchange in a traditional P2P network, the initial file-provider intentionally elects to share a file with a torrent network. This initial file is called a seed or seed file. Other users ("peers") choose to connect to the same torrent network and connect to the seed file to download it. As additional peers request the same seed file each additional user becomes a part of the network from where a copy of the seed file can be downloaded.

- unlike a traditional P2P network, in a torrent network the seed file is broken into many pieces with each peer receiving a different piece of the seed file from users who have already downloaded that piece or all the pieces of the seed file that together comprise

the whole. This piecemeal system with multiple pieces of the seed file coming from peer members is commonly referred to as a "swarm" in which the peers are cross-sharing all the pieces of the seed file until each peer has acquired all the pieces. Such file sharing networks can be properly used to share files where such file sharing is authorized.

- the torrent sharing of the copyrighted work is not authorized.

- the effect of using torrent technology to share unauthorized copies of copyrighted works makes every downloading peer also an uploading peer of the illegally transferred seed file or pieces thereof of the copyrighted work. This means that every "node" or peer user who has improperly obtained an infringing copy of the copyrighted material in a torrent network can also be a source of improper or infringing download, and thus a distributor for that infringing file.

- the distribution mechanism of a BitTorrent network leads to a rapid, viral spreading of infringement throughout peer users.

- as more peers join the swarm, the availability of successful infringing downloads of the pieces of the seed file increases.

- every peer is an infringer sharing copyrighted material with other infringing peers.

- defendants' actions are part of a common design, intention and purpose to hide behind the apparent anonymity provided by the Internet and the BitTorrent technology to unlawfully copy and distribute pieces of the Copyrighted Motion Picture in a manner that, but for the investigative and monitoring technology used by Plaintiff, would be untraceable, leaving the Plaintiff without the ability to enforce its copyright rights.

- by participating in the "swarm" to download Plaintiff's Copyrighted Motion Picture, the Defendants agreed with one another to use the Internet and BitTorrent technology to engage in violation of federal statute to accomplish and unlawful objective.

- each infringing Defendant is identified.  This is done by identifying the IP address assigned by the ISP used by each Defendant and the date and at the time at which the infringing activity of each Defendant was monitored and observed. This monitoring and observation are accomplished using forensic software to collect, identify and record the IP addresses used by seeders and peers using BitTorrent protocol to unlawfully share, copy, reproduce and distribute copyrighted works.

- to confirm reliability of such monitoring and identification, the forensic software uses recognized Transmission Control Protocol (TCP) to establish a direct electronic connection to each Defendant's computer.  This permits the forensic software to establish and maintain a network conversation through which the forensic software and the Defendant's computer exchange packets of data with each other.  The exchange of data between the forensic software and the Defendant's computer directly

identifies the Defendant's computer by its unique IP address and that on a given date and at a given time Defendant's computer possess files with particular hash IDs.

- the end results of the forensic software are evidence logs of infringing transactions and the IP addresses of the users responsible for copying and distributing the audiovisual work, here Mechanic: Resurrection. The IP addresses, hash IDs, dates and times, ISP and geolocation contained in Exhibit B correctly reflect infringers using the IP addresses and that they were all part of a "swarm" of users that were reproducing, distributing, displaying and/or performing the copyrighted work.

- each Defendant is alleged to have committed violations within the same series of transactions or occurrences (e.g. downloading and distribution of the same Copyrighted Motion Picture owned by Plaintiff) and by using the same means (BitTorrent network) at or about the same time as established by the contemporary exchange of the files bearing the same unique hash ID fingerprint.

- defendants' acts occurred in the same or related series of torrent transactions because each Defendant downloaded and/or distributed or offered to distribute the Motion picture to other infringers on the torrent network, including the Doe Defendants and/or other network users, who in turn without permission from Plaintiff downloaded and/or distributed the Copyrighted Motion picture.

- the temporal proximity of the monitored and observed acts of each Defendant, together with the known propensity of BitTorrent participants to actively exchange files continuously for hours and even days, or over a period of weeks or months, makes it apparent that Defendants either directly exchanged the motion picture with each other, or did so through intermediaries and each shared in the distribution of the Copyrighted Motion Picture to others bearing the same hash ID.

- defendants each combined with other infringers on the BitTorrent network to copy and/or distribute the Copyrighted Motion Picture, either in the same transaction or occurrence or a series of intentionally related transactions or occurrences.

- this combination is established because using BitTorrent requires the user/seeder/peer to intentionally download a program from BitTorrent that they then install on their computer called a "client." The BitTorrent client is the user's interface during the downloading/uploading process. The client may be free, supported by advertising, offer upgrades or add on services for a fee, or a combination of several options.  The initial seeder uses the client to divide the uploaded content, in this case Plaintiff's Copyrighted Motion Picture, into pieces saved as electronic files and delivers the pieces to different requesting peers.  The recipient peers then automatically begin delivering the piece they just received to other peers in the swarm.

- once a peer has downloaded all the pieces the client reassembles the pieces and the peer is able to view the movie.

- once a peer has downloaded all the pieces, that peer becomes known as an "additional seed" because it now continues to download pieces to other peers.

- defendants who wish to obtain content through a torrent swarm visit a "torrent site" or network site to find media or content available for torrent download, often using a standard web browser.

- a torrent site is often associated with advertising revenue or with subscription supported index of media or content being made available by other torrent users on the network and maintains a listing of movies and television programs among other protected content. A user then uses the torrent site to connect with other users and exchange or "share" content though the BitTorrent protocol often with many users at the same time.

- Internet piracy and in particular BitTorrent piracy of copyrighted work, though known as peer-to-peer file sharing, enables Defendants to not only avoid the expense of buying, renting or buying a ticket to view legitimate copies of the Copyright Motion Picture, but to also receive benefits of value.

- P2P file sharing is often a for-profit business as many software clients, torrent sites and networks generate millions of dollars in revenue through sales and advertising

- to increase the value of the advertising and sometimes subscription access sold by torrent sites, many torrent sites work to expand the pool of available titles and speed of downloads through increasing the number of member peers and thus the desirability of their clients and networks.

- torrent sites reward participating peers who contribute by giving them faster download speeds, greater access, or other benefits.

- a significant element of the BitTorrent economic model is that those who participate and download movies not only share and upload movies with others without charge among themselves, but participants are often rewarded through various means based on the volume and availability of content seeders/peers in turn provide the network.

- there is a feedback incentive for participants as they obtain not only the benefit of their pirated copy of a movie without paying the copyright holder, but they obtain other benefits by increasing the availability of pirated content to others.

- there are a growing number of users that participate in P2P networks and receive personal gain or compensation in that the networks they use reward those who provide large numbers of files for upload to others.

- the use of BitTorrent does more than cause harm through the theft of intellectual property. The BitTorrent distribution of pirated files is a model of business that profits

from theft through sales and advertising and a system of rewards and compensation to the participants, each of whom contribute to and further the infringing enterprise.

- each Defendant is a participant in the BitTorrent distribution of pirated files, and the substantially similar conduct of each Defendant furthered a model of business that profits from theft of intellectual property including Plaintiff's Copyrighted Motion Picture.

- the infringement complained of herein by each of the Defendants was part of a series of transactions involving an identical copy of Plaintiff's Copyrighted Motion Picture.

- each Defendant jointly and collectively supported and advanced an economic business model of avoiding payment to the copyright holder and/or profiting from the piracy of Plaintiff's Copyrighted Motion Picture.

- each Defendant knowingly and actively participated in a combination to perform an illegal act and/or injure Plaintiff through use of the BitTorrent protocol to infringe Plaintiff's Copyrighted Motion Picture.

- each Defendant, without the permission or consent of Plaintiff, has used, and continues to use, an online media distribution system to wrongfully misappropriate, reproduce and distribute to the public, including by making available for distribution to others the Copyrighted Motion Picture

- each Defendant participated in a swarm and/or reproduced and/or distributed the same seed file(s) of the Copyrighted Motion Picture in digital form either directly with each other or through a series of knowingly intended and related transactions.

- defendants acted to obtain Internet access through an ISP and permitted, facilitated and materially contributed to the extensive use of the Internet through his/her ISP to infringe Plaintiff's exclusive rights under The Copyright Act by or with others.

- defendants, with knowledge of the infringing conduct, failed to reasonably secure, police and protect the use of his/her Internet service against use for improper purposes such as piracy, including the downloading and sharing of Plaintiff's Copyrighted Motion Picture by others.

- defendants had the right and ability to supervise and control the activity constituting the infringement.

- each Defendant has directly, indirectly and/or contributorily violated Plaintiff's exclusive rights of at least reproduction, preparation derivative works and distribution of the Copyrighted Motion Picture.

- the acts of infringement have been willful, intentional, and in disregard of and with indifference to the copyrights of Plaintiff.

These are allegations of specific circumstances and specific acts of Defendants which actively encourage or induce infringement by others. These allegations lay the groundwork to meet the substantive standards of proof for contributory infringement under the case law discussed above.

### F. The Complaint meets the applicable plausibility standard

Plaintiff brought this action for copyright infringement against a number of Doe defendants initially identified only by Internet Protocol ("IP") addresses. Plaintiff alleges that it has the right to enforce copyrights in the protected motion picture *Mechanic: Resurrection*, and that each defendant directly, indirectly or contributorily infringed copyright in this district.

By motion for expedited discovery via subpoena, the identification of each defendant was sought via subpoena from the Internet Service Provider (ISP) associated with each IP address. By letter, the Comcast and CenturyLink ISPs sought to inform each defendant of Plaintiff's subpoena request and provided each Internet subscriber with knowledge of this case and with the contact information for Plaintiff's counsel. After receiving the subpoena response from the ISPs, Plaintiff, by letter, sought to contact each defendant to confirm and resolve the infringement and encouraged each defendant to seek legal counsel.

As needed, Plaintiff sought to serve the Complaint on defendants who had been identified and who had not settled. As required by order of the Court, Plaintiff also sought cooperation of defendants to participate in a Rule 26(f) conference and formulate a discovery plan. Plaintiff filed an Attorney Report and proposed discovery plan. Plaintiff served initial disclosures. As needed, Plaintiff has served discovery requests and sought entry of default and default judgment. Plaintiff has settled with as many defendants as possible and has filed dismissals and, where appropriate, consent judgments.

A complaint states a claim upon which relief may be granted so long as the plaintiff alleges the "grounds" of his "entitlement to relief."[16] Assessment of the adequacy of that pleading requires the court to view all factual allegations as true and in a light most favorable to plaintiff to determine whether plaintiff has presented enough facts to state a claim to relief that is plausible on its face:

> A pleading is required to contain a short and plain statement of the claim showing that the pleader is entitled to relief. We accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff. We then determine whether the plaintiff has provided enough facts to state a claim to relief that is plausible on its face. (internal quotations and citations omitted) [17]

A claim has facial plausibility when the plaintiff pleads factual content that allows the fact-finder/court to draw the reasonable inferences that the defendant is liable for the misconduct alleged.[18] This standard is not, however, akin to the higher "probability requirement." Rather, it only asks for "more than a sheer possibility that a defendant has acted unlawfully."[19]

To state a claim for copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."[20] Plaintiff alleged both in its complaint. Plaintiff alleges that each defendant is both the subscriber of the IP address and the infringer. Plaintiff alleges that infringement was observed over each IP address at certain dates and times. Taken as true, this allegation states that "copying of constituent elements" of the motion picture was caused by each defendant at the time infringement was observed.

As set forth above in section E, other allegations reveal the "plausibility," if not "probability," that Defendant is the responsible party including:

---

[16] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[17] *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017).
[18] *Twombly*, 550 U.S. at 556.
[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *and at 695* ("*Twombly* does not require a court at the motion-to-dismiss stage to consider whether the factual allegations are probably true. We made it clear, on the contrary, that a court must take the allegations as true, no matter how skeptical the court may be.").
[20] *E.g., Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.*, 499 U.S. 340, 361 (1991).

- the date and at the time at which the infringing activity of each Defendant was observed.

- the IP address used by each Defendant has been traced to the District of Utah.

- activity of each IP address of Defendants has also been observed and associated with significant infringing activity and associated with the exchange of other titles on peer-to-peer networks.

- the volume, titles and persistent observed activity associated with each Defendant's IP address indicates that each Defendant is not a transitory or occasional guest but is either the primary subscriber of the IP address or someone who resides with the subscriber and/or is an authorized user of the IP address.

- the volume of the activity associated with each Defendant's IP address further indicates that anyone using or observing activity on the IP address would likely be aware of the conduct of Defendant.

- the volume and titles of the activity associated with each Defendant's IP address indicates that each Defendant is not a child, but an adult, often with mature distinct tastes.

Take as true these allegations infer that each defendant is the subscriber and user of the IP address who participated in the infringing activity, a resident of the household, there was a pattern of observed infringement of other media via the IP address assigned to Defendant over a period of time strongly suggesting that the infringer is a regular occupant of the residence, not a guest or transitory resident, and that based upon the content of the movies identified the defendant is an infringing adult.

These allegations, and others, provide fair notice of the infringed copyright and how the unauthorized copying occurred, including the person likely to be responsible. Plaintiff's infringement claim is therefore more than "plausible on its face," and readily passes the *Twombly/Iqbal* standard for notice pleading.

## Conclusion

The proposed standard of proof for contributory infringement of copyright derived from *Cobbler* should not be adopted. Doing so would improperly narrow the contributory infringement standard in a manner inconsistent with the *Grokster* and *Sony* opinions of the United States Supreme

Court and/or with the opinions of other Circuit Courts of Appeal such as the *Gershwin* (Second Circuit) and *Aimster* (Seventh Circuit) opinions as discussed above.

Nevertheless, Plaintiff has sufficiently pled legal and factual points and circumstances that are more than was found inadequate in *Cobbler*, and more than meet the standards for contributory infringement consistent with *Cobbler, Grokster, Sony, Gershwin* and *Aimster*.

Plaintiff's complaint "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face[.]'"[21] Plaintiff's allegations meet the notice pleading standard of the *Twombly/Iqbal*.

Dated: February 4, 2019

                DUREN IP

                By: /s/Todd E. Zenger
                      Todd E. Zenger

                      Attorneys for Plaintiff
                      ME2 PRODUCTIONS, INC.

---

[21] *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *Cobbler*, 901 F.3d at 1147.

CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2019 a true and correct copy of the foregoing Brief 2 was duly filed with the Clerk of the Court, which caused service on all e-filers. In addition, service by mail was made on the following by U.S. first class mail on February 4, 2019:

| | | |
|---|---|---|
| Maria Olague | 4237 W 3150 S Apt 63a | West Valley City, UT 84120 |
| Robin Valdez | 3736 W Spring Vista Dr | West Valley City, UT 84120 |
| Reynaldo Toto Cruz | 1119 Coyote Run | Saratoga Springs, UT 84045 |
| Josephine Enciso | 1453 N Monroe Blvd | Ogden, UT 84404 |

/s/ Seth F. Littleford